# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-470V
UNPUBLISHED

| | |
|---|---|
| ROOSEVELT POORE,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: September 30, 2025 |

*Glen Howard Sturtevant, Jr.*, Rawls Law Group (Richmond, Richmond, VA, for Petitioner.

*Jamica Marie Littles*, U.S. Department of Justice, Washington, DC, for Respondent.

### RULING ON ENTITLEMENT[1]

On January 11, 2021, Roosevelt Poore filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a right shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on October 10, 2020. Petition at 1.[3] The case was assigned to the Special Processing Unit of the Office of Special Masters. For the reasons set forth below, I find that Petitioner is entitled to compensation.

---

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

[3] Petitioner also alleges that "if it is determined that the petitioner suffers from some underlying immunologic, neurologic, or genetic disorder, the vaccination administered to him on October 10, 2020, significantly aggravated that underlying disorder[.]"

## I.     Relevant Procedural History

On July 17, 2023, Respondent filed a Rule 4(c) Report opposing compensation. ECF No. 45. Respondent argues that Petitioner cannot meet the severity requirement of the Vaccine Act, and that the medical records do not reflect onset of shoulder pain within 48 hours of vaccination, or that his pain was limited to his vaccinated shoulder. *Id.* at 6-9. On December 15, 2023, Petitioner filed a Motion for a Ruling on the Record ("Mot."), ECF No. 50. Respondent opposed the motion on August 26, 2024, reiterating the arguments set forth in the Rule 4(c) Report. Respondent's Response to Petitioner's Motion for Ruling on the Record ("Opp."), ECF No. 52. Petitioner filed a reply on September 17, 2024. Petitioner's Reply to Respondent's Response to Petitioner's Motion for Ruling on the Record ("Reply"), ECF No. 54. The matter is ripe for resolution.

## II.    Petitioner's Medical Records

Petitioner received the flu vaccine on October 10, 2020. Ex. 1 at 2. The relevant medical record states that the vaccine was administered in the left deltoid. *Id.* A corrected record dated May 2, 2021, however, states the vaccine was given in Petitioner's right shoulder. Ex. 11 at 1.

On October 26, 2020, Petitioner saw Dr. David Hudson, a family medicine specialist. Ex. 2 at 2. He noted that he recently had a flu vaccine but did not report shoulder pain. *Id.* at 2-5.

Petitioner saw Nurse Practitioner ("NP") Julie Helton on November 3, 2020, complaining of right shoulder pain. Ex. 3 at 15. The record states Petitioner "got the flu shot in his right deltoid on 10/10/20" and was "having difficulty raising his right arm." *Id.* An exam showed decreased range of motion, tenderness, pain, and reduced strength in his right shoulder. *Id.* Petitioner was diagnosed with acute right shoulder pain and referred to orthopedics. *Id.* at 16.

On November 5, 2020, Petitioner saw NP Jessica Mills for right shoulder pain. Ex. 4 at 2. NP Mills noted Petitioner "had a flu shot on 10/10/2020 and had some soreness in his shoulder following the shot. [Two] weeks after the flu shot he developed worsening pain in the shoulder and difficulty with range of motion." *Id.* He also exhibited pain with impingement maneuvers and cross body abduction. *Id.* at 5-6. An x-ray revealed significant glenohumeral osteoarthritis. *Id.* at 6. Petitioner was diagnosed with impingement syndrome, acute pain, glenohumeral arthritis, and given a steroid injection. *Id.*

Petitioner attended two physical therapy sessions on November 18 and 24, 2020. Ex. 8 at 1-6. At the initial visit, he reported he had some soreness initially after the flu vaccine and the "symptoms worsened to point that he had difficulty using right [upper extremity]." *Id.*

On February 12, 2021, Petitioner returned to Dr. Hudson with reports of increased right shoulder pain. Ex. 2 at 5-6. The record states Petitioner "got flu vaccine in October 2020, after that he started having some right shoulder pain and difficulty raising his right arm." *Id.* An exam showed decreased range of motion and tenderness in his right shoulder. *Id.* at 6. Dr. Hudson diagnosed a chronic right shoulder pain that may involve a rotator cuff problem, but also stated he did not think the symptoms were related to the flu vaccine. *Id.* at 7.

Petitioner next sought medical care the following year - on January 31, 2022, when he again complained of right shoulder pain. Ex. 9 at 14. The record notes Petitioner was last seen on February 12, 2021, and that he was "[s]till having same shoulder problems". *Id.* at 15. An examination showed decreased range of motion but full strength, and an MRI was re-ordered. *Id.* at 14-17. The MRI occurred on February 28, 2022, and showed a partial thickness tear of the supraspinatus tendon, tendinosis, a partial tear of the distal superior subscapularis tendon fibers, and osteoarthritis of the glenohumeral joint. Ex. 10 at 6.

On April 4, 2022, Petitioner saw Dr. Thomas Leong, an orthopedic surgeon, for right shoulder pain. Ex. 10 at 2. He was diagnosed with impingement syndrome and a nontraumatic complete tear of the right rotator cuff. *Id.* at 6-7. Dr. Leong also noted Petitioner showed mild to moderate glenohumeral arthritis. *Id.* at 6.

Nine months later, on January 9, 2023, Petitioner returned to PA Mills to schedule surgical care for this right shoulder, reporting he still had significant pain and weakness. Ex. 12 at 13. On January 17, 2023, Petitioner had arthroscopic debridement, subacromial decompression, and rotator cuff repair in his right shoulder. Ex. 12 at 32. Between February 28 and May 19, 2023, Petitioner attended 25 physical therapy session. Ex. 13 at 3-66.

Petitioner, a truck driver by trade, submitted a declaration in support of the Petition. Ex. 6. He stated that the vaccine was administered in his right shoulder, but the vaccination site was incorrectly recorded. *Id.* at 1. He also stated that after a week he "was still in pain in [his] right shoulder" but thought he "overworked" his arm. *Id.* Further, Petitioner states that he went to physical therapy for his shoulder, but "due to COVID-19

I did not feel comfortable and safer around the crossed of people and other clients in the building." *Id.* at 2.

Sophie Poore, Petitioner's wife, also submitted a declaration in this matter. Ex. 7. She stated that Petitioner's shoulder was sore the day after his vaccination, but that over the next three weeks the pain continued to intensify. *Id.*

### III.   Fact Findings and Ruling on Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[4] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

---

[4] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

(iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.*, NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

### A. Severity Requirement

The first issue to be resolved is whether Petitioner has demonstrated that he suffered "residual effects or complications of [the injury alleged] for more than six months after the administration of the vaccine," as required for eligibility under the Vaccine Program. Section 11(c)(1)(D)(i).

There is no dispute that Petitioner received the flu vaccine on October 10, 2020. Therefore, he must demonstrate by preponderant evidence that his residual symptoms continued at least through April 10, 2021 (assuming onset of pain the day of vaccination). *See, e.g., Herren v. Sec'y of Health & Human Servs.*, No. 13-100V, 2014 WL 3889070, at *2 (Fed. Cl. Spec. Mstr. July 18, 2014); *see also Hinnefeld v. Sec'y of Health & Human Servs.*, No. 11-328V, 2012 WL 1608839, at *4-5 (Fed. Cl. Spec. Mstr. Mar. 30, 2012) (dismissing case where medical history revealed that petitioner's injury resolved less than two months after onset).

The record establishes that Petitioner first reported shoulder pain to any medical treater on November 3, 2020, three weeks after vaccination. Ex. 3 at 15. He initially sought care until February 12, 2021, approximately four months post vaccination. Ex. 2 at 5-6. Following that, Petitioner did not seek any medical care for nearly a year, or until January 31, 2022, when he reported right shoulder pain that he was still having since February of 2021. Ex. 9 at 14-15. This record alone, despite the significant gap, supports an ongoing (if mild) injury. Petitioner also argues that the COVID-19 pandemic was one reason why he limited his medical treatment, noting that the Governor of South Carolina issued an executive order directing all residents to limit social interactions and travel in April 2020. Mot. at 2. (I give this argument little weight, however, since Petitioner's vaccination occurred well after this executive order).

Respondent emphasizes that Petitioner regularly treated for four months, but then delayed for nearly a year before next seeking right shoulder care. Opp. at 7. Further, Petitioner does not adequately explain why there are no additional records of his alleged ongoing symptoms, evidence that he attempted remote physical therapy, or that he reported any ongoing shoulder pain. *Id.* at 7-8. There is no evidence that Petitioner sought any medical treatment between February 12, 2021, and January 31, 2022.

The overall record constitutes a sufficient showing of severity to meet the evidentiary standard, despite the significant treatment gap. It is likely that Petitioner's symptoms persisted through the six-month deadline, since the February 2021 record does not suggest Petitioner's symptoms were close to cessation. Further, when he returned to seek care in 2022, the record of his treatment encounter links his shoulder pain to his earlier shoulder injury. The consistently light history of treatment, however, suggests a mild injury - which will likely impact damages in this case.

### B. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the QAI requirements for a Table SIRVA.

### 1. Petitioner Had No Prior Left Shoulder Condition or Injury that would Explain his Symptoms

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). Respondent does not dispute that Petitioner meets this criterion. I find that he has demonstrated a lack of history of pain, inflammation, or dysfunction of his right shoulder that would explain his symptoms.

### 2. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of his Vaccination

The medical records preponderantly establish onset of injury close-in-time to vaccination. Petitioner first reported shoulder pain three weeks after his October 10, 2020 vaccination, when he specifically stated that he had a flu vaccine and is "having difficulty" with his right arm. Ex. 3 at 15. Thereafter, he consistently linked his shoulder pain to the flu shot. *See* Ex.4 at 2 (record from November 5, 2020 stating that Petitioner had some soreness following his flu vaccine and that he "developed worsening pain" thereafter); Ex. 8 at 1-6 (record from November 18, 2020 stating that Petitioner had initial soreness after the flu vaccine that "worsened to point that he had difficulty using" his right arm").

Respondent argues that Petitioner did not mention shoulder pain at his physical on October 26, 2020, and there is no record of shoulder issues at that time. Opp. at 10. Additionally, Respondent notes that Petitioner reported he developed pain two weeks after the flu vaccine. *Id.*

Even so, a finding of proper onset can be made based on such a record. Program petitioners are not required to marshal records setting forth with chronographic specificity the precise day and hour that their onset manifested. Further, Petitioner argues that the October 26 appointment was a general checkup and he did not believe his pain required medical attention at that time. Mot. at 7. While Petitioner's records include some inconsistencies, he described the pain as worsening, supportive of the conclusion that it may have been present since vaccination. Additionally, it is common for SIRVA petitioners to delay seeking treatment, thinking the injury will resolve on its own, especially since patients are often told by medical providers at the time of vaccination to expect some soreness and pain for a period of time after. And individuals also often misconstrue the nature of their injury, and therefore fail to inform treaters of all specific facts relevant to

onset until later. Otherwise, Petitioner affirmatively and repeatedly linked her shoulder pain to the flu vaccine.

Accordingly, there is preponderant evidence that establishes the onset of Petitioner's left shoulder pain more likely than not occurred within 48-hours of vaccination.

### 3. Petitioner's Pain was Limited to his Vaccinated Shoulder

Respondent contends that although Petitioner alleges a right SIRVA, the vaccine record states he received the flu vaccine in his left arm. Opp. at 10-11. Respondent's reading of the administration record is literally correct (Ex. 1 at 2 (stating the vaccine was administered in Petitioner's left arm)), but his argument does not take into account the totality of the evidence, which soundly supports a right-side vaccine-related injury.

The overall medical records, coupled with Petitioner's witness statement, establish that Petitioner consistently and reported to treaters *right* shoulder pain related to the flu vaccine. *See*, *e.g.*, 3 at 15 (record from November 3, 2020 stating Petitioner "got the flu shot in his right deltoid on 10/10/20"); Ex. 4 at 2 (record from November 5, 2020 stating Petitioner "had a flu shot on 10/10/2020 and had some soreness in his shoulder following the shot"). These records provide sufficient evidence that a vaccination was administered in Petitioner's right arm.

Respondent asserts that Petitioner relies on a vaccination record altered over six months after vaccination. Opp. at 11 (citing Ex. 11 at 1). And this record does appear to have been revised. But as described above, there is sufficient evidence even without the corrected record to find preponderant evidence that Petitioner's vaccine was administered in his right shoulder.

Respondent also claims that Petitioner cannot establish that his pain was limited to his vaccinated shoulder because he reported pain that radiated into his elbow, forearm, and fingers. Opp. at 11. The record contains reports of non-shoulder pain that radiated down Petitioner's arm (Ex. 4 at 2, Ex. 8 at 1), but at the same time consistently identifies pain and right shoulder issues. Ex. 3 at 15; Ex. 8 at 1-6. Petitioner's complaints, and the diagnoses, are consistent with other SIRVA injuries seen in the program including impingement syndrome and tendinosis. Ex. 4 at 6; Ex. 10 at 6-7.

Admittedly, Petitioner also experienced glenohumeral arthritis which may have contributed to symptoms outside the shoulder, and pain reported in Petitioner's arm and fingers is likely unrelated to his SIRVA. But such issues can be addressed when calculating damages. The mere existence of such record complaints does not defeat a

8

showing that Petitioner not only did experience shoulder-specific pain, but that *most* of his complaints and treatment efforts were aimed at that. Accordingly, preponderant evidence supports this Table element as well.

### 4. There is No Evidence of Another Condition or Abnormality

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest that any such condition or abnormality exists.

### C. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

That record shows that Petitioner received a flu vaccine intramuscularly on October 10, 2020, in the United States. Ex. 1; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Ex. 5; Section 11(c)(1)(E) (lack of prior civil award).

Based upon all of the above, Petitioner has established that he suffered a Table SIRVA. Additionally, he has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

### Conclusion

**In view of the evidence of record, I find that there is preponderant evidence that Petitioner satisfies the severity requirement and the QAI requirements for a Table SIRVA. Further, based on the evidence of record, I find that Petitioner is entitled to compensation.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master